**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 14 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

NATIONAL BUSINESS BROKERS,
LTD., a Colorado Limited Partnership,

Plaintiff-Appellant,

v.

JIM WILLIAMSON PRODUCTIONS,
INC., a Louisiana Corporation; JIM
WILLIAMSON, an individual; KEVIN
BRILEY, an individual; MARGORIE
BRILEY, an individual,

Defendants-Appellees.

No. 00-1411
(D.C. No. 00-WY-419-CB)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In this diversity case, plaintiff National Business Brokers, Ltd. (NBB) is appealing the district court's dismissal of its claims against defendants Jim Williamson (Williamson) and Jim Williamson Productions, Inc. (JWP) for lack of personal jurisdiction. *See Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250 (D. Colo. 2000). Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

## I. Background

NBB is a business broker. NBB's principal place of business is located in Colorado. Williamson is a citizen and resident of Louisiana. Williamson is a shareholder and the president of JWP. JWP is a Louisiana corporation, and its principal place of business is located in Louisiana.

In May of 1998, NBB obtained the commercial listing for the sale of JWP's wholly owned subsidiary, Educational Video Resources (EVR). NBB sent the listing agreement to JWP in Louisiana, and Williamson signed the agreement in Louisiana on behalf of JWP. The parties also negotiated a revised listing agreement. Williamson conducted all of the negotiations for the original and revised listing agreements on behalf of JWP, and neither Williamson nor any other representative of JWP traveled to Colorado in connection with the negotiations over the listing agreements or for any other reason. However, between April and October, 1999, Williamson contacted NBB in Colorado by

telephone, facsimile, or e-mail on at least sixty occasions requesting information and services pursuant to the terms of the listing agreements.

Defendants Kevin and Margorie Briley contacted NBB in September of 1999 to inquire about the sale of EVR. NBB put the Brileys in contact with Williamson after they signed a contract agreeing that all negotiations for the purchase of EVR would be conducted exclusively through NBB. NBB alleges that Williamson and JWP subsequently sold EVR to the Brileys for approximately $1.45 million and that Williamson and the Brileys excluded it from the sales negotiations. NBB further alleges that neither JWP nor Williamson paid it the eight percent sales commission it was due under the listing agreements. Although the Brileys resided in Colorado at the time they initially contacted NBB, they were residing in Louisiana at the time they purchased EVR, and the entire sales transaction occurred in Louisiana.

NBB brought this diversity action to recover the damages it has allegedly sustained as a result of the sale of EVR to the Brileys. In its original complaint, NBB named only Williamson and the Brileys as defendants, and it asserted claims against Williamson for breach of contract, promissory estoppel, unjust enrichment, civil conspiracy, and tortious interference with contract. Pursuant to Fed. R. Civ. P. 12(b)(2), Williamson filed a motion to dismiss NBB's complaint for lack of personal jurisdiction. On August 3, 2000, the district court held a

hearing on the motion to dismiss. Counsel for NBB failed to attend the hearing even though he admits he received notice of the hearing.

At the beginning of the hearing, counsel for Williamson informed the district court that, on July 31, 2000, NBB had filed a motion for leave to file a first amended complaint adding JWP as a defendant. Counsel for Williamson further informed the court that JWP, like Williamson, did not have sufficient contacts with the State of Colorado to support personal jurisdiction. After hearing argument on this issue, the district court determined that Williamson's only contacts with Colorado were the e-mails, faxes, and telephone calls that he had made or sent from Louisiana to Colorado. The court also determined that JWP's contacts with Colorado were no greater than Williamson's. The court found that such contacts were insufficient to support personal jurisdiction over either Williamson or JWP, and it granted the motion to dismiss as to both Williamson and JWP.

Counsel for NBB subsequently filed motions for reconsideration, but the district court denied the motions and dismissed NBB's claims without prejudice in a written order entered on August 31, 2000. In its order, the district court dismissed NBB's claims as to both Williamson and JWP on the grounds that: (1) neither Williamson nor JWP had sufficient minimum contacts with Colorado for the court to exercise "specific" personal jurisdiction under the Due Process

Clause of the Fourteenth Amendment, *National Business*, 115 F. Supp. 2d at 1254-55; (2) any economic injuries suffered by NBB in Colorado were insufficient to support personal jurisdiction under the tortious conduct provision of Colorado's long-arm statute, *see* C.R.S. § 13-1-124(1)(b), *id.* at 1255; and (3) because Williamson was the only individual who acted on behalf of JWP in its dealings with NBB, and NBB made no showing that JWP had any additional contacts with Colorado that went beyond Williamson's contacts, there was no error in dismissing NBB's claims against JWP before it was formally made a party to the case, *id.* at 1256. The district court subsequently certified its order of dismissal as a final judgment under Fed. R. Civ. P. 54(b), and this appeal followed.

## II. Analysis

Plaintiff has the burden of proving that personal jurisdiction exists. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Id.* Further, the allegations in the complaint must be accepted as true, and all factual disputes in the parties' affidavits must be resolved in plaintiff's favor. *Id.* We review the district court's dismissal for lack of personal jurisdiction de novo. *Id.*

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quotation omitted). Thus, the first step in the analysis is Colorado's long-arm statute, which permits the exercise of personal jurisdiction over defendants who either transact business in the state or commit a tort in the state. *See* C.R.S. § 13-1-124(1)(a) and (b). However, because Colorado's long-arm statute has been construed by the Colorado Supreme Court as allowing personal jurisdiction to the full extent permitted under federal law, *see Safari Outfitters, Inc. v. Superior Court*, 448 P.2d 783, 784 (Colo. 1968), "[our] analysis collapses into a single inquiry, whether the exercise of personal jurisdiction over Williamson and JWP comports with due process." *National Business,* 115 F. Supp. 2d at 1253.

"The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)). "Therefore, a 'court may exercise personal jurisdiction over a nonresident defendant only so long as there exist

'minimum contacts' between the defendant and the forum state.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

"The 'minimum contacts' standard may be met in two ways." *Id.* "First, a court may, consistent with due process, assert *specific* jurisdiction over a nonresident defendant 'if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities.'" *Id.* at 1090-91 (quoting *Burger King*, 471 U.S. at 472) (emphasis in original). Second, "[w]here a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities," the court may exercise general jurisdiction over the defendant if he has "continuous and systematic" general business contacts with the forum state. *Id.* at 1091 (citations and quotations omitted). NBB concedes that there was no basis for the district court to exercise general personal jurisdiction over Williamson or JWP, and the only issue is whether the district court correctly determined that it did not have specific personal jurisdiction over Williamson or JWP.

Specific personal jurisdiction will only exist where a defendant has purposefully directed his activities at the forum state, and "purposeful availment requires actions by the Defendant which create a substantial connection with the forum state." *Id.* at 1092 (quotation omitted). We agree with the district court's conclusion that the listing agreements and the telephone, facsimile, and e-mail

communications initiated by Williamson did not create a substantial connection between Williamson and JWP and the State of Colorado.

First, "[t]he law is clear that a party does not submit itself to personal jurisdiction in a distant forum simply by entering into a contract with a party that resides in that forum." *National Business*, 115 F. Supp. 2d at 1254. Second, "it is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995). Instead, "the exercise of jurisdiction depends on the *nature* of those contacts" and "whether they represent an effort by the defendant to purposefully avail itself of the privilege of conducting activities within the forum state." *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418-19 (10th Cir. 1988) (quotation omitted) (emphasis in original).

NBB has made no showing that Williamson and JWP signed the listing agreements or initiated the telephone, facsimile, and e-mail communications as part of a specific or intentional effort to conduct business within the State of Colorado. To the contrary, beyond the fortuitous fact that NBB's business was located in Colorado, Colorado had no specific relationship to the listing agreements or the process of locating a buyer for EVD. As a result, Williamson and JWP do not have sufficient minimum contacts with the State of Colorado to

support personal jurisdiction under federal law.[1]  *See Soma*, 196 F.3d at 1298-99 (holding that British bank's actions in sending faxes, written communications, and wire transfers to corporation located in Utah were insufficient to establish specific personal jurisdiction over bank in Utah where corporation made unilateral decision to conduct business with British bank and Utah had only fortuitous role in parties' relationship).

NBB also claims that the district court erred in refusing to exercise personal jurisdiction over Williamson and JWP under the tortious conduct provision of Colorado's long-arm statute, *see* C.R.S. § 13-1-124(1)(b).  We disagree.  As the district court found, "[a]bsent allegations of tortious activity in Colorado, exercise of personal jurisdiction under Colorado's long-arm statute is permitted only where 'the injury itself . . . occurred in Colorado.'"  *National Business*, 115 F. Supp. 2d at 1255 (quoting *McAvoy v. Dist. Court*, 757 P.2d 633, 635-36 (Colo. 1988)).  "Further, the injury in Colorado 'must be direct, not consequential and remote.'"  *Wenz*, 55 F.3d at 1508 (quoting *Amax Potash Corp. v. Trans-Resources, Inc.*, 817 P.2d 598, 600 (Colo. Ct. App. 1991)).  Thus, the fact that a Colorado resident sustains a loss of profits in Colorado as a result of a

---

[1]  Because Williamson and JWP do not have the requisite minimum contacts with Colorado, we do not reach the second part of the due process inquiry which involves the determination of whether "the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *OMI*, 149 F.3d at 1091 (quotation omitted).

tort that occurred elsewhere is insufficient to sustain long-arm jurisdiction under the Colorado statute. *Id.*

NBB alleges that Williamson, acting on behalf of JWP, engaged in a civil conspiracy with the Brileys and tortiously interfered with its contracts. It is undisputed that Williamson's alleged tortious conduct occurred in Louisiana where the sale of EVR took place. Further, while NBB, by losing out on its commission, may have suffered an adverse economic impact in Colorado in the form of a loss of profits, the actual injury occurred in Louisiana where the sale of EVR occurred. *See id.* (holding that while defendants' unauthorized dispersal of funds from Colorado plaintiff's trust account in England had economic impact on plaintiff in Colorado, the injury occurred in England where trust account was located). Accordingly, we agree with the district court that Williamson and JWP are not subject to personal jurisdiction under the tortious conduct provision of Colorado's long-arm statute. *See id.* ("That [plaintiff] may be economically impacted in Colorado, simply because he lives there, is insufficient to establish personal jurisdiction under [the tortious conduct provision] of the Colorado long-arm statute"); *accord Amax Potash* , 817 P.2d at 600.

Finally, the district court did not err in dismissing the claims against JWP before it was formally made a party to the case. Williamson was the only individual who acted on behalf of JWP in its dealings with NBB, and NBB has

-10-

made no showing that JWP had any additional contacts with Colorado that went beyond Williamson's contacts. Thus, the same set of factual allegations apply to both Williamson and JWP for purposes of resolving the personal jurisdiction issues, and the district court acted properly in dismissing the claims against both before JWP was formally made a party to the case.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge